IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Priscilla AMO KUFFOUR, | ) |
|             Plaintiff, | ) |
| v. | ) |
| Kirstjen M. NIELSEN, Secretary, U.S. Department of Homeland Security, | ) 1:18CV579 |
| Jefferson B. SESSIONS III, Attorney General, U.S. Department of Justice, | ) |
| Leander B. HOLSTON, Director, U.S. Citizenship and Immigration Services Charlotte Field Office, | ) |
|             Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Priscilla Amo Kuffour ("Kuffour"), applied for naturalization on June 14, 2010. (ECF No. 1 ¶ 11.) On May 14, 2014, the United States Citizenship and Immigration Services ("USCIS") denied her application. (*Id.* ¶ 13.) Having exhausted her administrative appeals, Kuffour petitions this Court for *de novo* review of that denial under 8 U.S.C. § 1421(c). (*Id.* at 2–4.) Defendants move to dismiss Kuffour's petition pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, (ECF No. 5), contending that this Court lacks subject matter jurisdiction because, in the time since filing, the Department of Homeland Security ("DHS") has initiated removal proceedings against her. (ECF No. 6 at 2–4.)

For the reasons that follow, the Court will deny Defendants' motion.

## I. BACKGROUND

Kuffour is a native and citizen of Ghana, now residing in High Point, North Carolina. (ECF No. 1 ¶ 5.) On June 22, 2005, she "obtained lawful permanent resident status" through the visa petition of her United States citizen stepfather, Gary Mathis. (*Id.* ¶¶ 10, 15.) Five years later, Kuffour applied for naturalization. (*Id.* ¶ 11.) However, on May 14, 2014, USCIS denied her application. (*Id.* ¶¶ 11–13.) According to the petition before this Court, USCIS determined that Kuffour was "not entitled to the permanent resident status" she had obtained because her mother's marriage to Mathis—the source of Kuffour's status as a permanent resident—was "for the sole purpose of circumventing immigration law" and, therefore, invalid. (*Id.* ¶ 16.)

Following her denial, Kuffour, on June 5, 2014, requested an administrative appeal hearing, which was conducted at the USCIS Charlotte Field Office on November 10, 2014. (*Id.* ¶¶ 18–19.) At the hearing, Kuffour maintained that she was still a legal permanent resident "since neither her nor her mother's lawful status had been terminated upon final administrative order." (*Id.* ¶ 20.) On May 31, 2016, USCIS vacated the original denial of Kuffour's application and invited Kuffour to submit additional evidence proving the validity of her legal status. (*Id.* ¶¶ 21–22.) Although Kuffour put forth materials "supporting the legitimacy of her mother's marriage," USCIS again denied her application for naturalization on January 3, 2018. (*Id.* ¶¶ 24–25.) In its decision, USCIS acknowledged that at the time Kuffour's status was adjusted to that of legal permanent resident she was "20 years old and [was] most likely not privy" to her mother's "marital relationship." (*Id.* ¶ 44.) Kuffour pursued a second administrative appeal hearing on April 2, 2018. (*Id.* ¶ 26.) She was again unsuccessful, and on

April 9, 2018 USCIS issued a "final administrative denial" of her naturalization application. (*Id.* ¶¶ 30–31.)

On June 29, 2018, Kuffour petitioned this Court for *de novo* judicial review of the final administrative denial of her naturalization application pursuant to 8 U.S.C. § 1421(c). (*Id.* ¶¶ 32–47.) In her petition, Kuffour alleges that she "meets the . . . requirements for naturalization" and that, despite USCIS's determination that she was not entitled to permanent resident status, her status has yet to be rescinded, adjusted, or otherwise terminated. (*Id.* ¶¶ 39–41, 43.) Kuffour believes that her application for naturalization should not have been denied and that, upon making "its own findings of fact and conclusions of law," 8 U.S.C. § 1421(c), this Court will agree. (*See* ECF No. 1.)

In August, 2018—after Kuffour filed her petition with this Court—DHS sent her a copy of a Notice to Appear ("NTA") in removal proceedings. (ECF No. 6 at 2; ECF No. 7 at 2.) According to Kuffour, the "putative NTA" stated that her initial appearance in the removal proceedings was scheduled for October 31, 2018. (ECF No. 7 at 2.) However, when counsel appeared at the specified Immigration Court on that date, he was informed that "no such court date existed and the putative NTA had not, in fact, been filed with the Immigration Court." (*Id.*)

Defendants have submitted, as an exhibit attached to their Reply Brief, (ECF No. 9), a declaration of the the Court Administrator of the Charlotte Immigration Court which states that DHS "initiated removal proceedings" against Kuffour "by filing a notice to appear ("NTA") with the Charlotte Immigration Court on August 28, 2018." (ECF No. 9-1 ¶ 2.) Furthermore, according to the declarant, the Executive Office for Immigration Review

3

("EOIR") "entered the NTA into EOIR's electronic database on November 8, 2018," "scheduled [Kuffour] for an initial master calendar hearing before an immigration judge on March 10, 2020," and "generated a notice of the scheduled hearing and mailed it to Ms. Kuffour on November 8, 2018." (*Id.* ¶ 4.)

Nowhere in their motion or supporting briefs do Defendants dispute that this Court had jurisdiction to hear Kuffour's petition at the time it was filed. (*See* ECF Nos. 6, 9.) However, Defendants argue that, under the Immigration and Nationality Act ("INA") and the Fourth Circuit's opinion in *Barnes v. Holder*, 625 F.3d 801 (4th Cir. 2010), "an alien in removal proceedings does not have a right to judicial review of her application for naturalization." (ECF 6 at 3.) Contending that Kuffour is now in removal proceedings, Defendants move to dismiss Kuffour's petition pursuant Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF Nos. 5, 6.)

## II. STANDARD OF REVIEW

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff, and the trial court may "consider evidence by affidavit, depositions or live testimony without converting

the proceeding to one for summary judgment." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Finally, when evaluating a Rule 12(b)(1) motion to dismiss, the court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## III. DISCUSSION

Under the INA, a person "whose application for naturalization . . . is denied, after a hearing before an immigration officer . . . may seek review of such denial before the United States district court." 8 U.S.C. § 1421(c). The court's review of such petitions "shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.*

In *Barnes v. Holder*, however, the Fourth Circuit held that review under § 1421(c) is limited by 8 U.S.C. § 1429, which states that "no application for naturalization shall be considered by the Attorney General if there is *pending against the applicant a removal proceeding.*" 625 F.3d at 806 (quoting 8 U.S.C. § 1429) (emphasis added). Unlike in this case, Barnes, a noncitizen permanent resident, had filed a naturalization application two years *after* removal proceedings had commenced against him.[1] *Id.* at 802. He then moved to terminate removal proceedings pursuant to 8 C.F.R. § 1239.2(f), which requires proof of "prima facie eligibility for naturalization" before relief can be rewarded. *Id.* at 802–3. Because Barnes was unable to obtain a letter from DHS attesting to his prima facie eligibility, the Immigration Judge ("IJ")

---

[1] Barnes had applied for naturalization on one prior occasion but withdrew that application in May of 2000. *Barnes*, 625 F.3d at 802.

5

handling his case refused to halt removal proceedings. *Id.* at 803. On appeal, the Board of Immigration Appeals ("BIA") upheld the IJ's decision, and Barnes petitioned the Fourth Circuit for review. *Id.*

Among other arguments, Barnes alleged that, because the BIA's decision "thwart[ed] [his] right to have his naturalization application timely adjudicated," his corresponding right "to pursue, if necessary, judicial review" of said application under §1421(c) had been denied. *Id.* The Fourth Circuit rejected this argument, reasoning that "[b]ecause, under § 1429, an alien in removal proceedings does not have a right to have his application adjudicated, it follows that he cannot possibly have a right to have the adjudication judicially reviewed." *Id.* at 806. In other words, so long as § 1429 prevents DHS from rendering a final decision on an application for naturalization, there will never be a final agency adjudication for a district court to review under §1421(c). *See id.* For Barnes, who went into removal proceedings *before* applying for naturalization, this meant that any right to judicial review under §1421(c) was merely speculative. *See id.*

According to Defendants, "[t]he application of 8 U.S.C. § 1429 and *Barnes* to this case is clear." (ECF No. 6 at 4.) So long as removal proceedings are pending against Kuffour, they argue, this Court lacks subject matter jurisdiction to review her petition. *Id.* Kuffour does not dispute Defendants' interpretation of *Barnes*, but contends that *Barnes* is "simply not applicable here" because, due to alleged procedural defects, "removal proceedings have not been properly initiated." (ECF No. 7 at 3–4.)

While the Court agrees with Defendants that removal proceedings have been properly initiated against Kuffour, the Court cannot agree that *Barnes* deprives district courts of subject

6

matter jurisdiction when, as with Kuffour, a petitioner has received a final administrative denial from USCIS, exhausted administrative appeals, and properly petitioned for judicial review under §1421(c)—all before removal proceedings are initiated.

### A. Initiation of Removal Proceedings

As a threshold matter, if Kuffour is not in removal proceedings, then § 1429 and *Barnes* have no bearing on her case. Based on the undisputed jurisdictional facts, this Court is satisfied that removal proceedings against Kuffour have commenced.

Pursuant to 8 C.F.R. § 1239.1(a), removal proceedings are "commenced by the filing of a notice to appear with the immigration court." The Supreme Court has held that, in this context, a notice is not considered a proper "notice to appear" unless it designates, in accordance with 8 U.S.C. § 1229(a), the specific time and place of the removal proceedings. *See Pereira v. Sessions*, 138 S. Ct. 2105, 2113–14 (2018). As detailed above, the initial NTA sent to Kuffour listed an appearance date of October 31, 2018. (ECF No. 6-1.) However, because EOIR did not enter the NTA into its database until November 8, 2018, the Immigration Court appears to have had no record of Kuffour's removal case when her attorney arrived in Charlotte for the scheduled first appearance. (*See* ECF No. 9-1 ¶ 4.) Given these facts, Kuffour argues that the NTA of August 28, 2018 was merely "putative" because it did not accurately specify the time and place of the removal proceedings and, as a result, she "is not in removal proceedings" at all. (ECF No. 7 at 3–4.)

Regardless of whether the initial NTA, on its own, was defective, the Notice of Hearing in Removal Proceedings issued by the Immigration Court on November 8, 2018 appropriately designates the requisite time and place. (ECF No. 9-2.) In *Pereira*, the Supreme Court also

explained that the government may alter the date of removal proceedings after issuing an NTA, so long as it provides written notice to the noncitizen specifying the new time or place of the proceedings and explaining the consequences of failing to attend. *See* 138 S. Ct. at 2119 (citing 8 U.S.C. § 1229(a)(2)). The EOIR has scheduled Kuffour for an initial master calendar hearing on March 10, 2020 and has properly notified Kuffour with this information via a Notice of Hearing in Removal Proceedings ("NHRP"). (ECF No. 9-1 ¶ 4.) The NHRP sent to Kuffour clearly states that she has been "scheduled for a MASTER hearing before the Immigration Court on Mar[ch] 10, 2020" and, in the third paragraph, thoroughly explains the consequences of "[f]ailure to appear." (ECF No. 9-2.) Kuffour offers no evidence to the contrary, and this Court considers these facts undisputed. Removal proceedings have commenced against Kuffour.

The Court notes the failure of communication between DHS and the Immigration Court on this point, and its determination that removal proceedings have commenced against Kuffour should not be deemed an endorsement of that practice. According to the declaration of the Court Administrator, in creating the NTA, DHS simply found an "open hearing time in EOIR's calendar" and printed that date and time without first confirming with EOIR. (*See* ECF No. 9-1 ¶ 3.) However, EOIR cannot schedule a respondent for a hearing "until the NTA is filed by DHS and then is entered into EOIR's electronic case system." (*Id.* ¶ 3.) Defendants submit that administrative backlogs are "resulting in unfortunate but unavoidable delays in the processing" of removals. (ECF No. 9 at 2.) But volume alone will not excuse failures to adhere to duties under the INA and related regulations. As in this case, the inclusion of an arbitrary date in an initial NTA "is likely to mislead many recipients and to prejudice

8

those who make preparations on the assumption that the initial date is firm." *Pereira*, 138 S. Ct. at 2125 (Alito, J., dissenting).

## B. Sections 1421(c) and 1429 under Fourth Circuit Precedent

Given that removal proceedings have commenced against Kuffour, the next question is whether § 1429, as construed in *Barnes*, deprives this Court of subject matter jurisdiction to consider her petition for judicial review. This Court concludes that it does not.

Under current immigration law, the "sole authority to naturalize persons as citizens of the United States" resides with the Secretary of Homeland Security.[2] 8 U.S.C. § 1421(a). Removal proceedings are initiated by DHS and conducted by immigration judges appointed by the Attorney General. *See* 8 U.S.C. §§ 1101(b)(4), 1227, 1229a(a). Thus, the executive branch wields primary authority over who becomes a citizen and who faces removal.

The judiciary, in turn, plays a narrow but important role in reviewing agency immigration actions. As explained above, § 1421(c) permits an applicant for naturalization to seek *de novo* review of USCIS's decision denying their application. Two related provisions, §§ 1252 and 1447(b) authorize further judicial oversight, respectively, in cases of removal and delay. *See* 8 U.S.C. § 1252 (authorizing judicial review of the "administrative record on which [an] order of removal is based"); 8 U.S.C. § 1447(b) (authorizing, in cases in which an application for naturalization is not addressed within 120 days, a district court to "either determine the matter or remand the matter").

---

[2] Although 8 U.S.C. § 1421(a) expressly vests naturalization authority with the "Attorney General," in 2002, Congress transferred the functions of naturalization to USCIS and DHS. *See* 6 U.S.C. §§ 202(3), 251(2), 271(b)(2), 557. Accordingly, courts interpret references to the Attorney General in 8 U.S.C. §§ 1421, 1429, 1445, and 1447 as referring to USCIS instead. *See Yith v. Nielsen*, 881 F.3d 1155, 1158 (9th Cir. 2018); *United States v. Lopez-Collazo*, 824 F.3d 453, 456 n.1 (4th Cir. 2016).

Historically, this division of authority—with most of the responsibility over immigration matters residing within the executive, save for a few preserved judicial functions—is relatively new. For much of the twentieth century, it was the courts that had "exclusive jurisdiction to naturalize persons as citizens of the United States," while the Attorney General oversaw the removal process. *See* Immigration and Nationality Act, Pub. L. No. 82-414, § 310, 66 Stat. 163, 239 (1952); *Dilone v. Nielsen*, 358 F. Supp. 3d 490, 495 (D. Md. 2019) (explaining that "responsibility for removal and naturalization was split between the judicial and executive branches"). Though the judiciary and the executive sometimes conferred over applications, naturalization and removal were considered "mutually exclusive" processes. *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012); *Etape v. Chertoff*, 497 F.3d 379, 388 (4th Cir. 2007) (Hamilton, J., dissenting).

As a consequence of this system, noncitizens would sometimes find themselves in a bind. Once removal proceedings commenced, a "race" would ensue "between the alien to gain citizenship" through the courts "and the Attorney General to deport him." *See Shomberg v. United States*, 348 U.S. 540, 544 (1955). To resolve this problem, Congress added to the immigration laws a "priority provision," § 1429, which established the primacy of removal proceedings over the naturalization process. *See id.* at 541. The amendment read: "[N]o petition for naturalization shall be finally heard *by a naturalization court* if there is pending . . . a deportation proceeding . . . ." Internal Security Act of 1950, Pub. L. No 81-831, § 27, 64 Stat. 987, 1015 (1950) (emphasis added). Under the plain text of the amendment, the effect of the "priority provision" on the judiciary was clear: No "naturalization court" could finalize a petition for naturalization while removal proceedings were ongoing.

10

In 1990, Congress again amended the INA, this time shifting authority over naturalization from the judiciary to the Attorney General. *See* 8 U.S.C. § 1421(a). In line with this redistribution, Congress also amended the text of § 1429 to substitute the words "considered by the Attorney General" for "finally heard by a naturalization court." *See* Immigration Act of 1990, Pub. L. No. 101-649, § 407(d)(3)(A), 104 Stat. 4978, 5041 (1990). However, as the Fourth Circuit explained in *Etape v. Chertoff*, rather than remove the judiciary from the equation altogether, Congress "specifically *retained* district courts' power to adjudicate naturalization applications, at a time when Congress could easily have eliminated that power." 497 F.3d at 387. Thus, as the statutory structure exists today, the executive holds power over naturalization and removal, but the judiciary reserves some ability to review executive decision-making or intervene in the case of delay.

*Barnes v. Holder* was decided against this backdrop. In *Barnes*, the Fourth Circuit considered the interplay between judicial review under § 1421(c) and § 1429's "priority provision." 625 F.3d at 806. Beginning with the text, the court juxtaposed the plain language of the two provisions. *Id.* While § 1429 prevents "the *Attorney General*" from considering an application for naturalization if a removal proceeding is pending, it is silent about what courts can or cannot do. 8 U.S.C. § 1429 (emphasis added). Instead, the plain language of § 1429 requires one department of the executive to stay its hand on naturalization while another proceeds with removal.

Section 1421(c) is similarly plain:

> A person whose application for naturalization under this title is denied . . . may seek review of such denial before the United States district court . . . . Such review shall be de novo, and the court shall make its own findings of fact and

11

conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). The section provides for *de novo* review of an administrative denial by a district court judge, who "shall" make its own findings of fact and conclusions of law, apart from whatever the agency determined. *Id.*

There is "no hint in the language of § 1429 that it also applies to the courts." *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1046 (9th Cir. 2004). However, to read §§ 1421(c) and 1429 in isolation would be to neglect the history of our immigration laws and potentially restart the "race" between naturalization and removal Congress sought to halt. *See Barnes*, 625 F.3d at 806 ("Congress clearly intended to give removal proceedings priority over naturalization."); *Etape*, 497 F.3d at 386 (explaining that, through the 1990 amendments to the INA, "Congress attempted to streamline the [immigration] process by giving the Attorney General authority to naturalize a citizen without permission from the district court").

Accordingly, the Fourth Circuit sought a "harmonious" reading of §§ 1421(c) and 1429—one which respected congressional intent and enabled both provisions to be read with "consistency." *See Barnes*, 625 F.3d at 806. Considering both history and text, the court concluded "that an alien has a statutory right to review of his naturalization application, unless he is in removal proceedings." *Id.*

Defendants treat this language from *Barnes* as creating a bright-line rule. Once a district court determines that removal proceedings have commenced, they argue, the court has no

choice but to relinquish its power of review until those proceedings have been resolved.³ (*See* ECF No. 6 at 3–4.) Under this view, questions about subject matter jurisdiction become simple. *See, e.g., Perez Guzman v. McAleenan*, No. 3:19-cv-158-KDB-DSC, 2019 WL 3561602, at *2 (W.D.N.C. June 26, 2019) (finding that the presence of removal proceedings presented "precisely the factual scenario" to decide a jurisdictional question easily under *Barnes*).

However, this Court does not read *Barnes* as stripping this Court of jurisdiction. At best, *Barnes* answers a specific question in light of a specific factual scenario: What is the impact of § 1429 on the right to judicial review when a noncitizen files a naturalization application after removal proceedings have already begun? The Fourth Circuit's answer—that because an alien in removal "does not have a right to have his application *adjudicated*, it follows that he cannot possibly have a right to have the *adjudication* judicially reviewed"—in no way speaks to cases like the one before us, where the petitioner's application had already been adjudicated before removal proceedings commenced. *See Barnes*, 625 F.3d at 806–07 (emphasis added). Moreover, *Barnes* nods approvingly to a decision from the Sixth Circuit which holds, on facts nearly identical to those in Kuffour's case, that § 1429 does not directly affect a district court's subject matter jurisdiction, though it may prevent a court from providing a meaningful remedy. *See* 625 F.3d at 806 (citing *Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004)).

"The effect of § 1429," in the Sixth Circuit's view, is "not to oust the district court of a jurisdiction expressly conferred on it by the very act of Congress that amended § 1429," but, rather, "to limit the scope of the court's review and circumscribe the availability of effective

---

³ The Seventh Circuit has similarly read *Barnes* to hold that "district courts lose subject-matter jurisdiction once the removal proceeding begins." *See Klene v. Napolitano*, 697 F.3d 666, 667 (7th Cir. 2012). However, this Court is not bound by that interpretation and reaches a different conclusion.

13

remedies." *Zayed*, 368 F.3d at 906. In fact, nearly every Court of Appeals considering the effect of § 1429 on § 1421(c) has agreed that district courts retain subject matter jurisdiction under § 1421(c) after removal proceedings have commenced. *See, e.g.*, *Bellajaro*, 378 F.3d at 1046 (commencement of removal proceedings does not alter a district court's jurisdiction to review a denial of a naturalization application under § 1421(c)); *Zayed*, 368 F.3d at 906 (same); *Gonzalez*, 678 F.3d at 258 (same); *Klene*, 697 F.3d at 668 (same). In contrast, only the Fifth Circuit appears to have expressly held that the initiation of removal proceedings strips district courts of subject matter jurisdiction. *See Saba-Bakare v. Chertoff*, 507 F.3d 337, 341–42 (5th Cir. 2007).

Furthermore, Defendants' interpretation of *Barnes* runs contrary to the Fourth Circuit's insistence in *Etape* that district courts retain important review authority under the revised INA. Were we to apply Defendants' rule in every case, the effect would be to take the right to review under § 1421(c) out of the hands of the petitioner and place it, instead, at the mercy of the government. The Fourth Circuit's treatment of the 1990 amendments to the INA in *Etape*—"Congress included [§ 1421(c)] because it did not want to 'take away any of the judicial review rights accorded applicants' in the predecessor legislation"—precludes such a broad reading.[4] *See* 497 F.3d at 386 (citation omitted).

Courts often serve as a "check" on the executive, and when, as here, the statute confers robust reviewing authority, we should not abdicate that familiar role without sufficient

---

[4] Nothing in Barnes explicitly undercuts or overrules *Etape*'s understanding of § 1421(c). Nor could it. *See Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir. 2001) ("[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting *en banc* can do that.").

14

justification. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967) ("[A] survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). In the same vein, because the application of § 1429 to both administrative *and* judicial review would greatly reduce any meaningful opportunity to challenge the denial of an application for naturalization, courts should be careful about relinquishing subject matter jurisdiction. *See Ngwana v. Att'y Gen of the United States,* 40 F. Supp. 2d 319, 322 (D. Md. 1999) (noting that "in sharp contrast to the de novo hearing to which petitioners are entitled when appealing naturalization decisions, deportation appeals are decided under a deferential standard").

One would think that the failsafe review provisions of § 1421(c) were drafted with someone just like Kuffour in mind: she has obtained a final administrative denial, exhausted all administrative appeals, and claims that Defendants "have not challenged [her] good moral character." (ECF No. 1 at ¶ 44.) Defendants' stretch *Barnes* to favor removal over judicial review in every instance. But this Court finds good precedent to support another view: Congress preserved judicial review in § 1421(c) to guard against wrongful denials of naturalization—even as the executive attempts to remove the petitioning individual. Read in context, this Court finds nothing in *Barnes* that indicates that the Fourth Circuit rejected that interpretation. Rather, to the extent *Barnes* curtailed jurisdiction under § 1421(c), it did so only for petitioners like Barnes, for whom the need for judicial review was still theoretical, and not for those like Kuffour, who, in contrast, only finds herself in removal after having had her application finally adjudicated by USCIS.

In sum, the best reading of *Barnes* is one that does not deprive a district court of subject matter jurisdiction to review a final administrative denial simply because removal proceedings have commenced. Kuffour's application was fully "adjudicated" before she filed for § 1421(c) review and before removal proceedings had commenced. Accordingly, this Court retains subject matter jurisdiction over Kuffour's petition.

### C. Declaratory Judgment as Available Remedy

Subject matter jurisdiction is meaningless unless a court is capable of affording a remedy. Recall that, under § 1429's "priority provision," USCIS is prohibited from "consider[ing]" an application for naturalization while removal proceedings are pending. *See* 8 U.S.C. § 1429. In practice, this means that district courts, which no longer possess any inherent naturalization power of their own, cannot order USCIS to naturalize someone while that person is in removal proceedings. *See* 8 U.S.C. § 1421(a) (Attorney General has "sole authority to naturalize persons"); *Klene*, 697 F.3d at 668 ("If the Attorney General cannot naturalize an alien after removal proceedings have begun, the court cannot direct the Attorney General to naturalize the alien."). For this reason, several Courts of Appeals have concluded that, while § 1429 does not deprive a district court of jurisdiction, it does limit the availability of effective remedies. *See, e.g. Zayed*, 368 F.3d at 906; *Aljani v. Chertoff*, 545 F.3d 229, 238 (2d Cir. 2008).

Again, *Barnes* offers this Court little guidance on how to proceed. The Fourth Circuit's emphasizing of § 1429 as a "priority provision" cautions against any remedy that would directly impact the executive branch's "sole authority" over naturalization. *See* 8 U.S.C. § 1421(a); *Barnes*, 625 F.3d at 806–07. But as the Seventh Circuit observed in *Klene v. Napolitano*, "to say

that the court cannot order the Attorney General to naturalize an alien is *not* to say that the court cannot act." 697 F.3d at 669. Both the Seventh and Third Circuits have held that a declaratory judgment of entitlement to citizenship would not run afoul of § 1429. *Id.*; *Gonzalez*, 678 F.3d at 258, 260–61; *see also Zayed*, 368 F.3d. at 906–07 (discussing declaratory relief, but abstaining because the petitioner did not request it).

By declaring the unlawfulness of a petitioner's denial of naturalization, a district court can satisfy its obligation to conduct *de novo* review without unduly interfering with removal proceedings:

> Declaratory relief, in the form of a judgment regarding the lawfulness of the denial of naturalization, permits the alien a day in court, as required by § 1421(c), while not upsetting the priority of removal over naturalization established in § 1429 because it affects the record for—but not the priority of—removal proceedings, thereby preserving both congressionally mandated goals, a *de novo* review process and the elimination of the race to the courthouse.

*Gonzalez*, 678 F.3d at 261. For a petitioner like Kuffour, for example, a declaration of her prima facie eligibility for naturalization could be valuable during the removal proceedings but would not go so far as to cut off the proceedings themselves.

Other district courts that have considered the prospect of declaratory relief under § 1421(c) have raised the concern that such relief could amount to nothing more than an advisory opinion. *See, e.g.*, *Vida v. Field Office Dir. U.S. Citizenship & Immigration Servs.*, No. 1:18-cv-2428, 2019 WL 3430131, at *2 (N.D. Ohio July 30, 2019); *Ka Lok Lau v. Holder*, 880 F. Supp.2d 276, 280 (D. Mass. 2012). A judgment that DHS and USCIS are free to ignore, they reason, "is no judgment at all." *See Vida*, 2019 WL 3430131, at *2. This Court respectfully disagrees. A declaratory judgment in the petitioner's favor "is not a dead letter because such

17

a judgment could be asserted in the removal proceedings."[5] *See Peprah v. United States Citizenship & Immigration Servs.*, No. 12 CV 02564, 2012 WL 5306849, at *4 (N.D. Ill. Oct. 26, 2012) (citing *Klene*, 697 F.3d at 669). For the purposes of declaratory relief, an actual controversy exists when "conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). There is undoubtedly a live, concrete controversy between Kuffour and DHS; she believes her adjusted status entitles her to citizenship, while the government disputes the validity of said status and seeks to deport her. A declaration that the denial of her application was unlawful could resolve this controversy, even if it did not force the termination of removal proceedings or result in a naturalization order.

The availability of declaratory relief would also potentially unlock the discovery process. Among her prayers for relief, Kuffour asks this Court to "order Defendants to produce any and all documents in discovery relied upon for denying Petitioner's application for naturalization." (ECF No. 1 at 12.) Of course, this Court cannot be certain that Defendants possess any discoverable materials aside from those which Kuffour had access to during her administrative appeals. But it is not unreasonable to think that discovery might yield insight and information that would be helpful during removal, as aliens in removal proceedings often bear the burden of establishing their own eligibility. *See* 8 C.F.R. § 1240.8.

---

[5] Whether such declaratory judgments should have preclusive, as opposed to just persuasive effect in removal proceedings is a question for another day.

A district court must still exercise discretion over whether to grant or withhold declaratory relief, even when the petition otherwise meets the prerequisites for subject matter jurisdiction. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 591 (4th Cir. 2004) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). Although district courts are afforded "great latitude" in deciding whether to assert jurisdiction over declaratory judgment actions, that latitude is not without limit. *See id. at 594*. In this case, one such limit, or, at least, a strong factor to be weighed, is the mandatory language of § 1421(c) itself: "Such review *shall* be de novo, and the court *shall* make its own findings of fact and conclusions of law and *shall*, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c) (emphasis added).

## IV.  CONCLUSION

Ultimately, this Court concludes that it has subject matter jurisdiction to review Kuffour's petition pursuant to § 1421(c). This Court also concludes that, given the distribution of authority in § 1421(a) and the priority of removal under § 1429, it can neither directly approve, nor order USCIS to approve Kuffour's application for naturalization. What is less certain is this Court's ability to allow § 1421(c) proceedings to continue while removal is pending. However, as *Barnes* does not speak directly to this issue, this Court will attempt to "give meaning to all statutory provisions and seek an interpretation that permits us to read them with consistency." 625 F.3d at 806 (quoting *United States v. Fisher*, 58 F.3d 96, 99 (4th Cir. 1995)). Because declaratory relief would preserve "the judicial review rights accorded applicants" under the INA, *Etape*, 497 F.3d. at 386, while also respecting Congress's

prioritization of removal proceedings, *Barnes*, 625 F.3d at 806, it is appropriate to recognize the availability of such a remedy in this case.

Accordingly, the Court will deny Defendants' Motion to Dismiss. For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss, (ECF No. 5), is DENIED.

This, the 9th day of September 2019.

/s/ Loretta c. Biggs
United States District Judge